*W. H. R. Unger,* for plaintiff.

*W. Irvine Wiest,* for petitioner.

*Preston B. Davis,* for sheriff.

TROUTMAN, J., July 25, 1949.—On August 27, 1948, plaintiff, Clarence E. Kramer, caused a writ of fieri facias to be issued and by virtue of said writ, the sheriff of the County of Northumberland caused a levy to be made on the same date on goods, wares, merchandise and equipment of defendant, John R. Moore, situate in a certain storeroom at the southwest corner of Third and Pine Streets in the Borough of Shamokin, County of Northumberland and Commonwealth of Pennsylvania and subsequent to this levy, on September 8, 1948, the sheriff sold the goods levied upon and realized from the sale the sum of $804.63, and after the payment of the costs and expenses in the amount of $82.20 there remained in the hands of the sheriff for distribution the sum of $722.43.

On August 31, 1948, petitioner, Grace I. Wiest, as landlord of John R. Moore, filed with the sheriff a written notice of a preferred rent claim and on September 8, 1948, a second notice was given to the sheriff by the same petitioner through her counsel, whereupon the sheriff of Northumberland County petitioned this court for leave to pay the net proceeds of the sale into court and on October 18, 1948, the prayer of the petition was granted and the sheriff of Northumberland County was authorized and directed to pay into court the net proceeds of the sale in the amount of $722.43. Subsequently, on October 25, 1948, Grace I. Wiest presented her petition for a rule on Clarence E. Kramer to show cause, if any he has, why the preferred rent claim of petitioner against the fund in the hands of the court in the above matter should not be paid, which rule was granted and made returnable November 8, 1948, which time was extended to November 15, 1948, by agreement of counsel and the court.

An answer was filed to the petition and rule by plaintiff, Clarence E. Kramer, on November 12, 1948. Thereafter, by stipulation filed by counsel for Grace I. Wiest and Clarence E. Kramer, it was agreed that in disposing of the petition for the distribution of the fund raised in the sheriff's sale, the court should take the facts as set forth in this stipulation to be true with the same force and effect as if found by the court after taking testimony of witnesses. The rule granted upon the petition of Grace I. Wiest, the landlord, to show cause why her preferred rent claim against the fund in the hands of the court should not be paid is now before the court for disposition.

The above proceedings appear to be regular and are sufficient to have this court assume jurisdiction to decree the disposition of the proceeds of the sale of

personal property sold by the sheriff. Where a landlord presents a claim for rent which is disputed, the sheriff can protect himself by paying the money into court. If he makes distribution without a proper order of court in such case, he is personally liable for any mispayment. Upon the payment of the sum realized from the sale into court by the sheriff, the court of common pleas has jurisdiction to order the distribution of the proceeds of the sale of personal property sold by the sheriff. Likewise, the parties in interest have assented to the assumption by this court of such jurisdiction definitely and affirmatively. See Cynkar v. Kaczynski, 105 Pa. Superior Ct. 434, 436.

The facts as contained in the stipulation of the parties are that plaintiff, Clarence E. Kramer, caused to be issued a writ of fieri facias on a judgment held by him against John R. Moore on August 27, 1948, and that by virtue of this writ the sheriff of Northumberland County caused a levy to be made on that date on the goods, wares, merchandise and equipment of defendant situate in a certain storeroom at the southwest corner of Third and Pine Streets in Shamokin, Northumberland County, Pa. On September 8, 1948, subsequent to the levy, the sheriff sold the goods levied upon and realzied from the sale the sum of $804.63.

On August 27, 1948, John R. Moore, defendant in the writ of fieri facias, was in possession of the storeroom by virtue of a certain written lease dated July 10, 1947, in which Grace I. Wiest was the lessor and John R. Moore was the lessee. The written lease provided for a demise of 35 months, beginning August 1, 1947, and ending July 1, 1950, for a total rental of $1,575, payable in monthly installments of $45 each on the first day of each and every month during the term of the lease or any extension or renewal thereof. On August 27, 1948, which was the date of the levy,

defendant was not in default in the payment of rent under the terms of the lease of July 10, 1947, all installments required of him to be paid by the terms of the lease up to and including the installment due on August 1, 1948, having been paid.

The written lease dated July 10, 1947, provides, inter alia, as follows:

"If default shall be made in the payment of any rent when the same shall become due, or if the said second party shall be sold out at sheriff's or constable's sale or permit any judgment to be entered against him, or make any assignment for the benefit of creditors, or commit any act of bankruptcy whatever, then the rent for the balance of the term shall at once become due and payable, as if by the terms of the lease it were all payable in advance, and may be collected by distress or otherwise, and shall be paid in full out of the proceeds of any assignment, sale or bankruptcy proceedings, any law, usage or custom to the contrary notwithstanding."

On August 31, 1948, Grace I. Wiest, the landlord, and petitioner herein, caused a written notice of a preferred rent claim to be sent by prepaid United States mail to James R. Lauer, sheriff of the County of Northumberland, notifying him that the goods and chattels of defendant, John R. Moore, seized in execution by him under the writ of fieri facias, were subject to distress by Grace I. Wiest for rent due and in arrears for the premises at the corner of Third and Pine Streets, Shamokin, Pa., from September 1, 1948, to July 1, 1950, and that the sheriff was required to pay the sum to Grace I. Wiest out of the proceeds of the sale. On September 8, 1948, subsequent to the sheriff's sale, Grace I. Wiest caused a second notice to be sent to the sheriff notifying him of her preferred rent claim for one year's rent at $45 per month under the

Act of June 16, 1836, P. L. 755, sec. 83. Both of these notices were received by the sheriff.

On October 18, 1948, upon petition of the sheriff, the court entered its decree authorizing him to pay the sum of $722.43 into court, being the remainder in his hands for distribution following the sale in execution. The sheriff subsequently paid this sum into court.

On September 8, 1948, immediately before the goods and chattels of defendant were exposed to sale by the sheriff, plaintiff in the execution, through his attorney, requested of the attorney for petitioner that the unexpired term of the lease be exposed for sale as an asset of the execution debtor, which request was refused, and whereupon plaintiff's attorney requested of the attorney for petitioner that permission be granted by the landlord that the execution creditor, if he became the purchaser of the goods and chattels of defendant, be allowed to retain possession of the demised premises upon the payment to the landlord of the rent for the balance of the demised term, which request was likewise refused.

Immediately following the sheriff's sale on September 8, 1948, petitioner, Grace I. Wiest, received and accepted possession of the demised premises and several hours after the sale, she entered into an agreement of lease with Anthony Zavatski and Anna Zavatski, for the use and occupancy of a portion of the demised premises for the term of one month, they having become the purchasers of the goods and chattels of defendant at the sheriff's sale. The lease to the Zavatskis covered only the storeroom whereas the premises leased to defendant consisted of the first floor and cellar of the building, the first floor consisting of a storeroom and two rooms in the rear thereof. This lease was merely an accommodation to the Zavatskis, who desired to store the goods and chattels they had pur-

chased at the sale in the storeroom until they could get a storeroom ready to receive them in Mount Carmel, Pa. The Zavatskis relinquished possession of the storeroom to petitioner, Grace I. Wiest, on October 8, 1948, and since that date the same has been vacant.

The landlord's rights arise under section 83 of the Act of June 16, 1836, P. L. 755, 68 PS §321, which reads as follows:

"The goods and chattels being in or upon any messuage, lands or tenements, which are or shall be demised for life or years, or otherwise taken by virtue of an execution, and liable to the distress of the landlord, shall be liable for the payment of any sums of money due for rent at the time of taking such goods in execution; provided, that such rent shall not exceed one year's rent."

Under the written lease between the landlord and the execution debtor dated July 10, 1947, it is expressly provided that if the second party (tenant) shall be sold out at sheriff's or constable's sale or permit any judgment to be entered against him, or make any assignment for the benefit of creditors, or commit any act of bankruptcy whatever, then the rent for the balance of the term shall at once become due and payable, as if by the terms of the lease it were all payable in advance and may be collected by distress or otherwise, and shall be paid in full out of the proceeds of any assignment, sale or bankruptcy proceedings, any law, usage or custom to the contrary notwithstanding.

Under the terms of the written lease, when the writ of fieri facias was issued against defendant and his personal property levied upon by the sheriff, the entire amount of rent provided in the lease became due and payable at once. There is nothing illegal or contrary to public policy in such a provision in a lease.

In Platt, Barber & Co. v. Johnson & Petersen, 168 Pa. 47, the lease contained a provision similar to that in this case. The Supreme Court said, at page 49:

"There is nothing illegal or contrary to public policy in either of the above quoted provisions. As was said in Goodwin vs. Sharkey, 80 Pa. 149, 153, 'the whole rent for the term might have been made payable in advance, and there exists no reason why it might not be made payable at any time during the running of the lease, upon the happening of any contingency. The right of the distress would immediately arise', upon the happening of the specified contingency; and that right might be exercised by the lessor to the extent of collecting more than one year's past due rent, provided the rights of execution creditors have not previously attached. If they have, the Act of June 13, 1836, limiting the lessor's right to payment out of such fund to an amount not exceeding one year's rent, becomes operative in favor of the execution creditors. That a landlord is entitled to claim rent payable in advance out of the proceeds of a sheriff's sale of the tenant's goods upon the demised premises, provided his claim does not exceed one year's rent, is well settled: Beyer vs. Fenstermacher, 2 Whart. 95; Purdy's App., 23 Pa. 97; Collins' App., 35 Pa. 83; and in his claim he is not restricted to the current month or year: Richie vs. McCauley, 4 Pa. 471; Mickey vs. Eyster, 58 Pa. 501; Weltner's App., 63 Pa. 302; nor does it make any difference that, as in this case, no more than a month's rent was originally made payable in advance, if, by force of express covenants in the lease, the whole rent becomes due and payable, in advance, upon the happening of certain contingencies, one or more of which have actually occurred before the rights of execution creditors attached: Goodwin vs. Sharkey, supra; Owens vs. Shovelin, 116 Pa. 371."

In Weiss v. Levey, 69 Pa. Superior Ct. 359, the lease provided that if the goods upon the premises should be sold under execution against the tenant, then the rent for the balance of the entire term should at once become due as if by the terms of the lease it were all payable in advance. On June 28, 1917, at a time when no rent was due, a levy was made. The goods were sold July 17th. The lessor claimed eight months' rent from July 1, 1917, to the end of the term of the lease. The lower court refused to direct the sheriff to pay the landlord the future eight months' rent for the reason that there was no rent due on the date of the levy. The lower court found that one month's rent fell due the day of the sheriff's sale but held that the fund raised by the sale was not liable since it fell due after the goods were taken in execution.

The Superior Court, in reversing the court below, held as follows, at page 360:

"The defendant in the execution was bound by the terms of his lease, and, the contingency provided for in paragraph ten having happened, the $120 became due and payable as though the rent for the entire term had been made payable in advance, that is, as of the date of the inception of the lease, and that was prior to the levy of the execution creditor. The execution creditor stands in the place of his debtor, and as there is nothing illegal or contrary to public policy in the provision of the tenth paragraph, appellant was entitled to the rental to the end of the term out of the fund raised by the sale of Levey's goods: Goodwin vs. Sharkey, 80 Pa. 149; Platt, Barber & Co. vs. Johnson & Petersen, 168 Pa. 47."

A contingency which made all the rent reserved, and unpaid, for the remainder of the term having happened, the entire unpaid balance became due and was payable out of the fund in the hands of the sheriff. The rights of the execution creditor having previously at-

tached, the Act of June 16, 1836, supra, limiting lessor's right to payment out of such fund to an amount not exceeding one year's rent, as a preferred claim, becomes operative: General Tire & Rubber Co. et al. v. The General Tire & Sales Co., Inc., et al., 93 Pa. Superior Ct. 173, 176.

It is the contention of plaintiff in the execution and respondent in the rule, Clarence E. Kramer, that the landlord lost her right to claim the full year's rent after taking possession of the premises. In support of this contention, defendant cites several cases in bankruptcy including Wilson v. Pa. Trust Co., 114 Fed. 742 (1902) ; In re Barnett, 12 F. (2d) 73, and Electric Appliance Co. v. Ellis, 4 F. (2d) 108. These cases assert the doctrine that a landlord, who claims rent in advance to the end of the term, must permit the tenant's trustee in bankruptcy to have the use of the premises to the end of the term. According to defendant since the landlord took possession of the premises, she cannot claim rent for the balance of the term. In the stipulation of facts, there is contained a paragraph that Grace I. Wiest, the landlord, received and accepted possession of the demised premises immediately after the sheriff's sale on September 8, 1948. The question now arises whether in accepting possession of the premises, the landlord accepted a surrender of the lease. At the time of the sheriff's sale, plaintiff through his attorney, requested the attorney for the landlord to expose for sale as an asset of the execution debtor, the unexpired term of the lease, which was refused. We are of the opinion that this action on the part of the attorney for the landlord did not preclude the landlord from pursuing her rights under the lease nor is it any evidence of her intention to regain possession of the property and in fact, establish a surrender and acceptance of the lease by her.

While it is true that a leasehold may be sold in execution and, being a chattel and not real estate, may be sold on a fieri facias, without inquisition and condemnation: Brown v. Beecher, 120 Pa. 590; a judgment against the tenant is not a lien upon it. In order to make it the subject of a sheriff's sale it is necessary that the unexpired portion of the lease should be levied upon and taken into execution as any other chattel and if plaintiff in the judgment feels that the unexpired term of the lease has any value, and his judgment is not yet satisfied, he may still proceed against the leasehold interest as he would against any other chattel of the debtor. However, attention is called to the fact that there is a provision against subletting contained in the written provisions of the lease. There was no obligation on the part of the landlord to expose the leasehold interest to public sale by the sheriff.

In relation to the request made by the attorney for plaintiff that permission be granted by the landlord that the execution creditor, if he became the purchaser of the goods and chattels of the execution debtor, be allowed to retain possession of the demised premises upon the payment to the landlord of the rent for the balance of the demised term, which request was refused, we are of the opinion that the refusal to grant such permission is likewise no evidence of any intention on the part of the landlord to accept a surrender of the premises. In the first place, the request was made upon the contingency that plaintiff in the execution would become the purchaser of the tenant's goods and chattels, and in the second place, as will be later pointed out, the landlord was under no duty to lease the premises to anyone else.

Immediately following the sheriff's sale, the landlord entered into an agreement of lease with Anthony Zavatski and Anna Zavatski, who had become the purchasers of the goods and chattels of defendant at the

sheriff's sale, for the use and occupancy of a portion of the demised premises for the term of one month, said lease being merely an accommodation to them for the purpose of storing the goods and chattels they had purchased at the sale in the storeroom until they could get a storeroom ready to receive them in the Borough of Mount Carmel.

We are of the opinion that this act of the landlord did not relieve the tenant from his liability under the lease. It is well settled that a surrender of demised premises, in order to be effectual to release a tenant from payment of rent, must be accepted by the lessor and the burden of proof is upon the lessee to show such acceptance: Gardiner v. Bair, 10 Pa. Superior Ct. 74, 80; Auer v. Penn, 99 Pa. 370. Where the lessee abandons possession without right, the landlord may allow the property to stand idle and hold the tenant for the entire rent; or he may lease it in the interest of the tenant and hold him for the difference, if any: Auer v. Penn, supra; Jenkins v. Root, 269 Pa. 229; General Tire & Rubber Co. v. General Tire & Sales Co., supra.

There can be no surrender of a lease without the further acceptance of it by the lessor. We find that while the stipulation does say that the landlord received and accepted possession of the demised premises immediately after the sheriff's sale, such acceptance of possession was not in fact an acceptance of a surrender of the lease but was simply for the purpose of looking after the property and maintaining the same. There is no averment which indicated that the tenant was forced to turn over the possession of the premises and the mere taking part of the premises on the part of the landlord cannot be construed as an acceptance of a surrender of the lease which would nullify the claim of the landlord for rent due to her.

The burden of showing an acceptance of a surrender is on the lessee and is primarily a question of the landlord's intention: Brill v. Haifetz, 158 Pa. Superior Ct. 158, 162.

In this case the landlord did not consent, either expressly or impliedly, to the tenant's violation of the lease or relieve him of liability thereunder. In this case, it can clearly be inferred that the tenant, John R. Moore, abandoned the possession of the premises, without right and without any acceptance upon the part of the landlord. Both parties agree that the landlord accepted and received possession of the premises without any facts indicating that she demanded possession or that such acceptance was meant to be an acceptance of the surrender of the lease. We are of the opinion that the language of the Supreme Court in the case of Jenkins v. Root, supra, page 232, is appropriate to the facts of this case, wherein it is stated:

"Where the first lessee, without right, abandons the possession, the landlord may resume possession and rent or repair the property, in the interest of the first tenant, who remains liable for any defalcation or deficiency in the rent, and the joinder of the first lessee in securing another tenant will not work a surrender in law unless the owner agrees thereto": citing cases. This principle was reaffirmed in Brill v. Haifetz, supra, page 163.

Following the removal of the goods purchased at the sheriff's sale by the Zavatskis, which occurred a month following the sale, the premises have remained vacant. Under the facts of this case, we are convinced that the landlord resumed the possession of the property in the interest of the tenant, John R. Moore, and did not relieve him of liability thereunder but was simply carrying out her duty of doing what she could to minimize the damages by renting the premises, at least for a short period, to the Zavatskis. It is not

necessary for a landlord to notify a tenant abandoning the premises that she will not accept the surrender and will hold him for the rent for the balance of the term. It is likewise not necessary for the landlord to notify the lessee on reletting during his term after abandonment by the lessee, that the reletting is for his benefit and to minimize his loss. A reletting within the term of the first lease is not such an unequivocal act as to indicate an intention on the part of the lessor to accept the surrender of the property: Ralph v. Deiley, 293 Pa. 90.

The stipulation of facts does not reveal how much rent the landlord received from Anthony and Anna Zavatski for the occupancy of a portion of the leased premises, nor was any claim advanced by either party to the present controversy as to the application of any money which may have been received by the landlord from Anthony and Anna Zavatski. Having previously held that the rental of a portion of the premises by the landlord did not work an acceptance of a surrender on the part of the landlord, any sum received on the part of the landlord must be applied to the reduction of her claim against the tenant. Inasmuch as the premises were leased subsequent to the sheriff's sale, we are of the opinion that the landlord could apply this payment to the portion of her claim which was least secured. See Page v. Wilson, 150 Pa. Superior Ct. 427, 433.

In relation to costs, inasmuch as the landlord had not distrained for her rent prior to the execution, the reasonable costs necessary for the proceeding and sale will follow the usual course and be first paid out of the proceeds of sale before any distribution among the creditors in the order of their priority. See Globe Solvents, Inc., et al. v. Nouskhajian, Trustee, et al., 148 Pa. Superior Ct. 209, 214.

Therefore, we are of the opinion that the landlord is entitled to be paid one year's rent at the rate of

$45 a month, or a total of $540 out of the fund paid into court and the balance of this fund shall be paid to Clarence E. Kramer, plaintiff in the execution and respondent in the rule, to be applied on account of his judgment.

### Order

And now, to wit, July 25, 1949, the rule to show cause why the preferred rent claim of Grace I. Wiest against the fund in the hands of the court should not be paid is hereby made absolute and it is ordered, adjudged and decreed that there shall be paid out of the fund in the amount of $722.43, which the Sheriff of Northumberland County was authorized and directed to pay into court, to the landlord, Grace I. Wiest, the sum of $540 in payment of one year's rent at the rate of $45 per month and that the balance of this fund shall be paid to Clarence E. Kramer, plaintiff in the writ of fieri facias and respondent in the rule. Costs of this proceeding to be paid out of the fund.